# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# 2:11cv40

| PATRICIA NATIONS, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for social security disability benefits. This case came before the Court on the administrative record and the parties' Motions for Summary Judgment [# 11 & # 16]. The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 16] and **AFFIRM** the Commissioner's decision.

I.  **Procedural History**

Plaintiff filed an application for disability benefits on January 24, 2007. (Transcript of Administrative Record ("T.") 218-20.) Plaintiff alleged that she

became disabled beginning June 30, 2006. (T. 218.) The Social Security Administration denied Plaintiff's claim, finding that she was not disabled. (T. 166-69.) Plaintiff requested reconsideration of the decision, which was also denied. (T. 170-71.) A disability hearing was then held before an Administrative Law Judge ("ALJ"). (T. 120-44.) The ALJ issued a decision finding that Plaintiff was not disabled. (T. 150-60.) Subsequently, the Appeals Council remanded the case to the ALJ, finding that the record was unclear as to the severity of Plaintiff's physical impairments and that the ALJ's finding as to Plaintiff's residual functional capacity ("RFC") was inconsistent with his finding that Plaintiff could return to her past relevant work as a janitor and sewing machine operator. (T. 162-64.)

The ALJ held a second hearing on May 20, 2012. (T. 55-119.) Plaintiff, Plaintiff's daughter, a medical expert, a psychiatric expert, and a vocational expert all testified at the hearing. (Id.) The ALJ then issued a second decision finding that Plaintiff was not disabled from the alleged onset date through the last date insured. (T. 12-27.) The Appeals Council denied Plaintiff's request for review of the decision. (T. 1-3.) Plaintiff then timely brought this action seeking review of the Commissioner's decision.

## II. Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if she

is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); see also Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Under this inquiry, the Commissioner must consider in sequence: (1) whether a claimant is gainfully employed; (2) whether a claimant has a severe impairment that significantly limits her ability to perform basic work-related functions; (3) whether the claimant's impairment meets or exceeds the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, subpart P; (4) whether the claimant can perform her past relevant work; (5) whether the claimant is able to perform any other work considering her age, education, and residual functional capacity. Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 654 n.1; 20 C.F.R. § 404.1520. If at any stage of the inquiry, the Commissioner determines that the claimant is or is not disabled, the inquiry is halted. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

### III. The ALJ's Decision

In his July 30, 2010, decision the ALJ found that Plaintiff was not disabled

under Sections 216(I) and 223(d) of the Social Security Act. (T. 27.) The ALJ made the following specific findings:

(1) The claimant last met the insured status requirements of the Social Security Act on March 31, 2010.

(2) The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 7, 2006 through her date last insured of March 31, 2010 (CFR 404.1571 *et seq.*).

(3) Through the date last insured, the claimant had the following severe impairment: bipolar disorder and chronic obstructive pulmonary disease (COPD) (20 CFR 404.1520©).

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

(5) After careful consideration of the entire record, I find that, through the date last insured, the claimant had the RFC to perform medium work as defined in 20 CFR 404.1567© (lift/carry a maximum of 25 pounds frequently and a maximum of 50 pounds occasionally, stand/walk for six of eight hours and sit for six hours in an eight-hour workday) except that she must avoid concentrated exposure to fumes, dust, odors, gases and poor ventilation; and is limited to simple one and two-step tasks, a low stress work environment defined as, non-productive work.

(6) Through the date last insured, the claimant was capable of performing past relevant work as a cleaner. This work did not require the performance of work-related activities precluded by the claimant's RFC(20 CFR 404.1565).

(7) The claimant was not under a disability, as defined in the Social

> Security Act, from June 7, 2006, the alleged onset date, through March 31, 2010, the date last insured (20 CFR 404.1520(f).

(T.14-27.)

**VI.    Standard of Review**

Section 405(g) of Title 42 provides that a plaintiff may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review, however, is limited. The Court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id. When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law. Id.

## V. Analysis[1]

### A. The ALJ did not Err in Finding that Plaintiff did not Meet Listing 12.04

Plaintiff contends that the Court should remand this case because the ALJ erred by failing to determine that Plaintiff met Listing 12.04 as a result of her bipolar disorder. At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairment meets or exceeds the listing of impairments contained in Appendix I of 20 C.F.R. Part 404, subpart P. Mastro, 270 F.3d at 177. The relevant listing in this case is Listing 12.04, which provides that a claimant must suffer a medically documented "bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndrome." 20 C.F.R. § 404 Subpart P, App. I § 12.04. In addition, the Plaintiff's condition must satisfy one of the additional criteria set forth in the listing:

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

---

[1] Rather than separately set forth the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § 404 Subpart P, App. I § 12.04.

The ALJ found that Plaintiff did not have any restrictions in daily living or social functioning, only moderate difficulties in concentration, persistence or pace, and no episodes of decompensation of extended duration. (T. 18-19.) Accordingly, the ALJ found that Plaintiff did not satisfy the criteria for Listing 12.04B. (T. 19.) The ALJ also found that Plaintiff did not meet the criteria for Listing 12.04C. (T. 19-21.) Upon a review of the record in this case, the Court finds that the ALJ's decision as to whether Plaintiff met listing 12.04 was supported by substantial evidence in the record.

At the hearing, Dr. Bryan Warren, who testified as a psychiatric expert,

testified that when Plaintiff was hospitalized in 2006, she met the criteria for Listing 12.04 but that "since that time, if she stays on her medication, she's really having no real problem." (T.107-8.) Dr. Warren offered this testimony after reviewing the medical evidence and hearing the testimony of Plaintiff and her daughter. Dr. Warren further testified that "[i]t seems, though, that since her hospitalization, she doesn't - - has not - - her symptoms do not meet the criteria for A and B impairment, except when she doesn't take her medication." (T. 108.) In short, Dr. Warren found that as long as Plaintiff takes her medication, she does not meet the criteria for Listing 12.04. (T. 109.)

Dr. Edwin Brian, who is board-certified in internal medicine and cardiovascular disease (T. 59-60), testified as to Plaintiff's physical condition (T. 62), but also offered testimony as to Plaintiff's mental condition (T. 61, 63-68). Although he testified that Plaintiff's symptoms likely met the criteria for 12.04B, Dr. Brian repeatedly qualified his testimony. For example, Dr. Brian stated that "[i]t is not terribly clear how well she's been doing since '07, but I would suspect that her illness continues." (T. 61.) In addition, Dr. Brian acknowledged that his testimony regarding Plaintiff's limitations was based on limited information and, as the ALJ concluded, amounted to speculation. (T. 20-21, 64-8.) Unlike Dr. Warren, Dr. Brian did not hear the testimony of Plaintiff or her daughter. In fact, Dr. Brian

declined the opportunity to ask any questions of the Plaintiff, stating on the record that he had no questions to ask Plaintiff at the hearing. (T. 60-1.) In short, the ALJ did not err in evaluating the testimony of Dr. Brian and relying on Dr. Warren's testimony that since her hospitalization, that so long as Plaintiff takes her medication, she does not meet the criteria for Listing 12.04. Accordingly, the Court finds that the decision of the ALJ that Plaintiff did not meet listing 12.04 was supported by substantial evidence in the record.

### B. The ALJ's RFC Determination is Supported by Substantial Evidence in the Record

Residual functional capacity is an administrative assessment made by the Commissioner as to what a claimant can still do despite his or her physical or mental limitations. SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1546©; 404.946©. In assessing a claimant's residual functional capacity, the ALJ will consider all of the claimant's medically determinable impairments, including those that are not severe. 20 C.F.R. § 404.1545(a)(2). The residual functional capacity assessment is based on all the relevant medical and other evidence in the record. 20 C.F.R. § 404.1545(a)(3). In determining a claimant's residual functional capacity, the ALJ must identify the claimant's functional limitations or restrictions and assess the claimant's work-related abilities on a function-by-function basis. SSR 96-8p. The ALJ's assessment must include a

narrative discussion detailing how the evidence in the record supports his or her conclusion. SSR 96-8p.

In his decision, the ALJ found that:

> the claimant had the RFC to perform medium work as defined in 20 CFR 404.1567© (lift/carry a maximum of 25 pounds frequently and a maximum of 50 pounds occasionally, stand/walk for six of eight hours and sit for six hours in an eight-hour workday) except that she must avoid concentrated exposure to fumes, dust, odors, gases and poor ventilation; and is limited to simple one and two-step tasks, a low stress work environment defined as, non-productive work.

(T. 21.) Upon a review of the evidence in the record, the Court finds that the ALJ's RFC is supported by substantial evidence in the record. The objective medical evidence in the record, which the ALJ discussed in detail in making the RFC determination, supports the conclusion that Plaintiff can perform medium work. (T. 21-22.) Amy Rehfield found that Plaintiff's ability to perform activities such as lifting, pushing, and pulling heavy objects is mildly impaired. (T. 446). Dr. Sankar Kumar and Dr. Janet Johnson-Hunter both found that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for six hours in an eight hour workday, sit for six hours and had no postural limitations. (T. 448-49, 503-04.) Dr. Brian testified that Plaintiff had no major physical impairments. (T. 62.) Accordingly, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff can perform medium work.

Although Plaintiff contends that the ALJ should have given greater weight to the opinion of Dr. Anthony Carraway in assessing Plaintiff's mental limitations in the RFC, the Court finds that the ALJ's determination as to Plaintiff's mental limitations is also supported by substantial evidence in the record. Dr. Carraway opined that Plaintiff's ability to perform simple, repetitive task and to understand, retain and perform instructions is mildly to moderately impaired. In addition, Dr. Carraway found that Plaintiff has moderate impairment of attention and concentration and had limited insight and judgment regarding her continued need for treatment and medications. (T. 421.) The Court, however, cannot say that the ALJ committed error by assigning this opinion little weight (T. 22.) As the ALJ explained:

> Dr. Carraway's exam was . . . made within a month of the date she told Dr. Belsky that she was happy with her medications, had recently visited her daughter in Indiana and she had two essentially normal status exams. His conclusions are inconsistent with her consistent statements to treatment sources from January 2007 through January 2010 that she was "doing well, doing fine, or doing great," was having no complaints and that her depression was well controlled.

(T. 22.) On April 9, 2007, Dr. Corinne Belsky noted that Plaintiff's insight was full, her judgment intact, her thought was linear and logical, and she reported that she was happy with her medications. (T. 463.) On August 9, 2007, Dr. Belsky noted that Plaintiff's insight was full, her judgment intact, and her thought was

linear and logical. (T. 465.) Even when Plaintiff was released from the hospital in July 2006, her insight and judgment were good. (T. 316.) Finally, as the ALJ correctly noted, Plaintiff indicated to her health care providers that she was doing well on her medications. (T. 471, 530, 534-36.) Accordingly, the Court finds that the ALJ did not err in assigning little weight to the opinion of Dr. Carraway or in finding that Plaintiff can perform simple one and two-step tasks and work in a low stress work environment.[2] The ALJ's RFC determination is supported by substantial evidence in the record.

C.  **The ALJ Applied the Proper Legal Standard in Assessing Plaintiff's Credibility and his Determination was Supported by Substantial Evidence in the Record**

As an initial matter, the Court recognizes that it is not the role of this Court to determine whether Plaintiff's testimony was fully credible. Craig, 76 F.3d at 589. Rather, the question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility and whether the ALJ's decision is supported by substantial evidence. Id.

In assessing a claimant's statement of pain and other symptoms, the ALJ applies a two part process. Id. at 594; Hines, 453 F.3d at 565. First, the ALJ must assess whether there is a medically determinable physical impairment that could

---

[2] In contrast to Plaintiff's argument to the contrary, the ALJ properly developed the record in this case.

reasonably be expected to produce claimant's symptoms. 20 C.F.R. §404.1529(c)(1); Craig, 76 F.3d at 595; Hines, 453 F.3d at 565. If the ALJ finds that a claimant suffers such an impairment and that it could reasonably be expected to produce the symptoms or pain of which claimant complains, the ALJ proceeds to step two. 20 C.F.R. § 404.1529(c)(1); Aytch v. Astrue, 686 F. Supp. 2d 590, 604 (E.D.N.C. 2010).

At the second step, the ALJ must evaluate the intensity and persistence of the pain, as well as the extent to which the claimant's symptoms and pain impact his or her ability to work. 20 C.F.R. § 404.1529(c)(1); Craig, 76 F.3d at 595. "This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus the ALJ must consider conflicts between the claimant's statements and the rest of the evidence." Aytch, 686 F. Supp. 2d at 604. This evaluation takes into account all of the available evidence, including the claimant's medical history, the medical signs and laboratory findings, other objective medical evidence, and testimony or statements from claimant, physicians, or others regarding the pain and symptoms. 20 C.F.R. § 404.1529(c)(1) & (2); Craig, 76 F.3d at 595. In addition to the objective medical evidence, the ALJ considers: (1) the daily activities of claimant; (2) the location, duration, frequency, and intensity

of the claimant's pain and symptoms; (3) factors that predicate or aggravate the claimant's pain and symptoms; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes in order to alleviate the pain or symptoms; (5) any treatment other than medication that claimant received to alleviate the pain or symptoms; (6) any additional measure that claimant used to relieve the pain or symptoms; (7) any other factors concerning claimant's functional imitations and restrictions resulting from the pain or symptoms. 20 C.F.R. § 404.1529(c)(3); see also Aytch, 686 F. Supp. 2d at 605.

The ALJ's credibility determination must constitute more than a conclusory statement that the claimant's allegations are not credible. SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). The decision must contain specific reasons for the finding and must "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id.

Here, the ALJ applied this two step process in assessing Plaintiff's statements regarding her symptoms. The ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleged. (T. 23-6.) The ALJ then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not

credible to the extent they are inconsistent with the above RFC assessment." (T. 26.) The ALJ provided specific reasons for why he found Plaintiff's testimony not fully credible. (T. 23-26.) Thus, in contrast to Plaintiff's contention to the contrary, the ALJ applied the appropriate legal standard in assessing her statements as to the severity of her symptoms.

Moreover, upon a review of the medical records and the transcript of the hearing, the Court finds that the ALJ's determination that Plaintiff's testimony was not fully credible is supported by substantial evidence in the record. See SSR 96-7p. The medical records demonstrate that so long as Plaintiff is on her medications, she does not suffer from debilitating mental limitations. In September 2007, Plaintiff was happy with her medication, had fair energy and concentration, was cooperative, polite, alert and made good eye contact, and her speech was spontaneous and coherent with normal rate, rhythm and volume. (T. 463). Plaintiff had no psychomotor abnormalities, no hallucinations, and no delusions. (Id.) Her judgment was intact, she had a full insight, her thoughts were linear and logical. (Id.) In 2008, Plaintiff was doing "really well on her current medications." (T. 536.) Finally, Dr. Warren testified that so long as she takes her medications, she has no real problems. (T.108-09.) Accordingly, substantial evidence supports the determination of the ALJ that since being on her medications after her

hospitalization in 2006, Plaintiff "has had essentially normal mental status exams, has not required inpatient treatment and has had few, if any, manic episodes." (T. 25.) The ALJ did not err in assessing Plaintiff's credibility.

### D. The ALJ did not Err at Step Four of the Sequential Evaluation Process

At step four of the sequential evaluation process, the ALJ must determine whether the claimant can perform her past relevant work. Mastro, 270 F.3d at 177. The ALJ concluded that Plaintiff could return to her past relevant work as a cleaner in a casino. (T. 26-27.) In making this decision, the ALJ relied on the testimony of a vocational expert who testified in response to a hypothetical question that an individual of Plaintiff's age, education, work history, and RFC could work as a casino cleaner, which is classified as light unskilled work. (T. 114, 116-17.) Although Plaintiff points to a number of alleged errors with the ALJ's determination that Plaintiff could return to her prior work as a cleaner, the Court finds that the ALJ's determination at step four was supported by substantial evidence in the record.

As a threshold matter, the vocational expert testified in response to a proper hypothetical question. "The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which [a] particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th

Cir. 1989). Not only must the opinion of the vocational expert be based on all the evidence in the record, but "it must be in response to proper hypothetical questions which fairly set out all the claimant's impairments." Id.; Hines, 453 F.3d at 566; Riley v. Chater, 57 F. App'x 1067 (4th Cir. 1995) (unpublished). Here, the ALJ asked the vocational expert a hypothetical that fairly set out each of the Plaintiff's impairments that the ALJ found to be credible and supported by the evidence in the record. (T. 116.) This is all that is required of the ALJ.

In addition, there was no conflict between the Dictionary of Occupational Titles and the information provided by the vocational expert. The vocational expert found that Plaintiff's prior job as a casino cleaner was similar to the entry in the Dictionary of Occupational Titles for housecleaning, maids, light janitorial type of work. (T. 114.) As the vocational expert testified, this job is classified as light work. DOT 323.687-014, 1991 WL 672783. The vocational expert further testified that Plaintiff's prior job as a casino clearer was light, unskilled work. (T. 114.) The ALJ found that Plaintiff is capable of performing medium work. (T. 21.) Thus, there was no conflict between the DOT and the testimony of the vocational expert, and substantial evidence supports the determination of the ALJ that Plaintiff could perform her past relevant work as a cleaner.

## VI. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** the Commissioner's Motion for Summary Judgment [# 16], **DENY** the Plaintiff's Motion for Summary Judgment [# 11], and **AFFIRM** the Commissioner's decision.

Signed: July 6, 2012

_Dennis L. Howell_
Dennis L. Howell
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)©, and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).